IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S.S., by and through her parent and legal guardian, GERALD S., <br><br> Plaintiff, <br><br> v. <br><br> GEIBEL CATHOLIC JUNIOR SENIOR HIGH SCHOOL, PATRICIA NICKLER, MAUREEN MARSTELLER, and COLE KENDALL, <br><br> Defendants. | CASE NO. 2:20-cv-1671 |

**GEIBEL DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Defendants Geibel Catholic Junior Senior High School, Patricia Nickler ("Principal Nickler"), and Maureen Marsteller ("Dr. Marsteller," collectively, the "Geibel Defendants"), hereby move to dismiss the Amended Complaint filed by Plaintiff, S.S., by and through her parent and legal guardian, GERALD S., pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff cannot maintain her Title IX claim against Geibel because she does not allege she suffered any harassment as a result of Geibel's alleged indifference. Alternatively, Plaintiff's allegations of Title IX liability against Geibel prior to February 9, 2020 must be dismissed because, as Plaintiff alleges, Geibel did not have actual notice of the alleged discrimination until then.

Plaintiff's tort claims also fail. Her negligence claim against the Geibel Defendants is barred by the gist of the action doctrine, as Plaintiff's relationship with the Geibel Defendants is contractual in nature. Additionally, her claim for negligent infliction of emotional distress against Principal Nickler and Dr. Marsteller must be dismissed because there is no underlying negligence and because she suffered no specific, physical injury as a result of her alleged distress.

1

Pursuant to the Court's Standing Order and Procedures on Civil Motion Practice (Doc. 13), undersigned counsel for the Geibel Defendants has conferred with Plaintiff's counsel in a good faith attempt to resolve or narrow the issues in this Motion prior to its filing. The parties were unable resolve all their differences.

In support of this motion, the Geibel Defendants incorporate by reference the accompanying Memorandum of Law. A proposed form of Order is attached.

WHEREFORE, the Geibel Defendants respectfully request the Court grant this Motion and enter an Order in the form attached hereto.

Respectfully submitted,

Date: February 3, 2021

*/s/ Corey S. D. Norcross*
Corey S. D. Norcross (PA Id No. 316909)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19013
Phone: 215.564.8000
Fax: 215.564.8120
cnorcross@stradley.com

*Counsel for Defendants Geibel Catholic Junior Senior High School, Patricia Nickler, and Maureen Marsteller*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| S.S., by and through her parent and legal guardian, GERALD S., <br><br> Plaintiff, <br><br> v. <br><br> GEIBEL CATHOLIC JUNIOR SENIOR HIGH SCHOOL, PATRICIA NICKLER, MAUREEN MARSTELLER, and COLE KENDALL, <br><br> Defendants. | CASE NO. 2:20-cv-1671 |

**MEMORANDUM OF LAW IN SUPPORT OF GEIBEL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, acting through her parent and legal guardian, brings suit against Defendants Geibel Catholic Junior Senior High School, Patricia Nickler ("Principal Nickler"), Maureen Marsteller ("Dr. Marsteller," collectively, the "Geibel Defendants"), and Cole Kendall for harassment and abuse she's alleged to have suffered between March 2019 and October 2020. Because Plaintiff cannot sustain her claims against them, the Geibel Defendants file a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and submit this Memorandum of Law in support thereof.

**I.   INTRODUCTION AND FACTUAL BACKROUND[1]**

Plaintiff brings suit against her former school, principal, superintendent, and classmate, alleging they violated Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 and

---

[1] For purposes of this motion only, the Geibel Defendants assume the facts alleged in the Amended Complaint are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). No deference, however, is or should be given to the Amended Complaint's legal conclusions. *Id.*

1

committed a litany of other torts.

### A. Plaintiff's Alleged Harassment.

Plaintiff is a minor girl and student at Geibel, a private, Roman Catholic high school based in Connellsville, Pennsylvania. (Am. Compl. ¶¶ 4-5, 10-11.) She alleges that on March 8, 2019, her classmate Cole Kendall touched her and tried to kiss her without her consent in a school bathroom. (*Id*. ¶¶ 9, 12-16.) Approximately a month later, on April 15, 2019, Plaintiff alleges Cole Kendall again kissed and touched her without her consent while at school and forced Plaintiff to touch his penis. (*Id*. ¶¶ 21-26.) Plaintiff also contends that at various unidentified times after March 8, 2019, Cole Kendal sent her unwanted photographs of his penis and grabbed her buttocks without her consent while on the school bus. (*Id*. ¶¶ 19-20, 45.)

### B. Plaintiff Reports the Harassment but Withholds Critical Information.

Plaintiff alleges that shortly after the April incident, she reported the harassment to her grandfather and Principal Nickler.[2] (*Id*. ¶¶ 30-32.) Plaintiff admits that in doing so, she withheld the identity of her alleged perpetrator from Principal Nickler. (*Id*. ¶ 31) ("At the time, Plaintiff's grandfather did not provide Defendant Nickler with Defendant Kendall's name."); (*Id*. ¶ 32) ("Plaintiff met with Defendant Nickler and reported the inappropriate and unlawful conduct of Defendant Kendall . . . without specifically identifying Defendant Kendall.") Principal Nickler purportedly assured Plaintiff and her grandmother that Plaintiff would be protected, that security cameras would be installed at the school, and that Geibel's teachers and staff would be informed of the incidents so they could "keep an eye" on Plaintiff. (*Id*. ¶¶ 33-34, 49-51.) Principal Nickler also purportedly told Plaintiff's grandmother that she had a list of male students whom she suspected were Plaintiff's perpetrator. (*Id*. ¶ 35.)

---

[2] Principal Nickler is Geibel's principal. (Am. Compl. ¶ 7.)

2

Plaintiff alleges that despite making these purported promises, Principal Nickler did not investigate her claims or take any action. (*Id*. ¶¶ 36-39, 55.) Plaintiff also complains that Principal Nickler did not separate her from "any male students" and did not report Plaintiff's assault. (*Id*. ¶¶ 40-41, 56.) Plaintiff does not indicate how Principal Nickler could have separated her from her alleged harasser when Principal Nickler did not know the harasser's identity, but Plaintiff nonetheless impugns Geibel and Principal Nickler because she purportedly had to attend class and activities alongside Cole Kendall. (*Id*. ¶ 44.) And while Plaintiff contends that Cole Kendall "continued to harass and assault" her while at Geibel, she provides no facts to support this conclusory allegation and does not allege she told any of the Geibel Defendants of Cole Kendall's continued harassment. Nevertheless, Plaintiff alleges she was subject to a sexually hostile environment that caused her emotional distress, fear, and embarrassment and that denied her equal access to an education. (*Id*. ¶¶ 46-48.)

Plaintiff alleges that on December 6, 2019, Alison Testa, Geibel's guidance counselor, overheard Plaintiff tell another student of Cole Kendall's behavior and identify Cole Kendall by name. (*Id*. ¶ 52.) According to Plaintiff, Ms. Testa immediately reported Cole Kendall's actions to the Pennsylvania State Police. (*Id*. ¶ 54.) Plaintiff does not allege that Ms. Testa or the police informed any of the Geibel Defendants of the identity of her purported perpetrator.

### C. The Geibel Defendants Learn of Cole Kendall's Identity for the First Time.

According to Plaintiff, the Geibel Defendants first learned of Cole Kendall's identity on February 9, 2020. Indeed, Plaintiff alleges that on February 9, 2020, Alison Testa advised Dr. Marsteller that it was Cole Kendall that had harassed Plaintiff.[3] (*Id*. ¶ 57.) Plaintiff contends that

---

[3] Dr. Marsteller is the Superintendent of Catholic Schools for the Diocese of Greenburg, which includes Geibel. (Am. Compl. ¶ 8.)

3

Dr. Marsteller thereafter offered to pay for Plaintiff's therapy, but allegedly did nothing else to protect Plaintiff from Cole Kendall. (*Id*. ¶¶ 58-59.) Plaintiff also alleges that her grandmother communicated with Principal Nickler multiple times about Geibel's response to Plaintiff's reported assault, but Principal Nickler did not take any action. (*Id*. ¶¶ 60-63.)

Because of these alleged misdeed, Plaintiff charges Geibel with violating Title IX (Count I), Principal Nickler and Dr. Marsteller with negligent infliction of emotional distress ("NIED") (Count III), and all three Geibel Defendants with negligence (Count II).

## II. ARGUMENT

### A. Legal Standard

A complaint must contain a "plain statement of the claim to show that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Rule 12(b)(6) standard serves to test the adequacy of a complaint, which must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556. While a court must treat the allegations in a complaint as true, it need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. A complaint that pleads facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and citation omitted).

### B. Plaintiff's Title IX Claim Must be Dismissed or Limited.

Plaintiff attempts to hold Geibel liable pursuant to Title IX for the harm she allegedly

4

suffered because of Cole Kendall's harassment. Title IX provides that "[n]o person . . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681. The Supreme Court has recognized that student-on-student sexual harassment can create an actionable Title IX claim against a school in "certain limited circumstances." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643 (1999); *see also Doe v. Bellefonte Area Sch. Dist.*, 106 F. App'x 798, 799 (3d Cir. 2004). To establish a claim against a school for student-on-student sexual harassment under Title IX, a plaintiff must show:

> (1) the defendant received federal funds; (2) sexual harassment occurred; (3) the harassment took place under circumstances wherein the funding recipient exercised substantial control over both the harasser and the context in which the . . . harassment occurred; (4) the funding recipient had 'actual knowledge' of the harassment; (5) the funding recipient was 'deliberately indifferent' to the harassment; and (6) the harassment was 'so severe, pervasive, and objectively offensive that it could be said to have deprived the victims of access to the educational opportunities or benefits provided by the school.

*Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 748 (W.D. Pa. 2018) (quoting *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 365 (W.D. Pa. 2008)).

Plaintiff's Title IX claim should be dismissed because she failed to demonstrate that Geibel's actions or inactions caused her to suffer "severe and pervasive" harassment that deprived her of educational benefits. Alternatively, her allegations of Geibel's liability prior to February 9, 2020 must be dismissed because Geibel did not have "actual notice" of Plaintiff's complaints prior to that date.

### i. Plaintiff Did Not Suffer Severe and Pervasive Harassment Caused by Geibel's Alleged "Deliberate Indifference."

Plaintiff contends that Cole Kendall's harassment and assaults created a sexually hostile environment that caused her emotional distress and denied her equal access to an educational

5

experience. She attempts to hold Geibel liable for this pursuant to Title IX, claiming that Geibel knew of the alleged harassment and sexually hostile environment caused by Cole Kendall and failed to remedy it. Because Plaintiff does not identify any actionable harassment that occurred after Geibel had actual notice, she cannot maintain a Title IX claim.

Relevant here, a school can only be liable to a student if it had "actual notice" that harassment occurred and its "deliberate indifference" to the student's complaints caused the student to suffer additional "severe and pervasive" harassment that deprived them of educational benefits. A school cannot be deliberately indifferent unless it was first given "actual notice" that the harassment had occurred. *Lansberry*, 318 F. Supp. 3d at 748 (quoting *Dawn L.*, 586 F.Supp.2d at 365). A school has actual notice of an incident of Title IX harassment only when an appropriate person learns of the it. An "'appropriate person' is an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the districts behalf.'" *Id.* at 751 (quoting *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 360 (3d Cir. 2005)). Actual notice is vital as it provides the school with sufficient knowledge from which it can address the alleged harassment or discrimination.

Plaintiff details two instances in which Cole Kendall allegedly harassed and assaulted her on Geibel property – one on March 8, 2019 and the other on April 15, 2019. (Am. Compl. ¶¶ 9, 12-16, 21-26.) Plaintiff admits that Geibel was unaware of either until after they happened. (*Id.* ¶¶ 30-32.) Because Geibel did not have actual notice of the incidents, it cannot be held liable for them. *Lansberry*, 318 F. Supp. 3d at 748 (to be liable for student-on-student sexual harassment under Title IX, a school must have had "actual knowledge" of the harassment).

Even when Plaintiff did inform Principal Nickler of the March and April incidents, that was insufficient to provide the school with actual notice. Actual notice exists only if an appropriate

6

person learns of the underlying facts that sufficiently indicate a substantial danger to a student so that the school is aware of the danger. *Bostic*, 418 F.3d at 361. Here, Plaintiff did not give Principal Nickler sufficient information to put Geibel on notice of a danger because Plaintiff did not reveal the identity of her alleged perpetrator. (Am. Compl. ¶¶ 31-32.) Knowing the identity of the alleged perpetrator is critical to providing a school with actual notice because without it, the school does not have the facts necessary to prevent future incidents of harassment or discrimination as required by Title IX. Because Geibel did not know the identity of Plaintiff's perpetrator when the incidents were reported, it did not have actual notice of the alleged harassment.

Therefore, and despite the fact that Plaintiff told Principal Nickler of the incidents sometime in April 2019, Geibel did not have "actual notice" of Plaintiff's complaints until February 9, 2020 when Alison Testa informed Dr. Marsteller. That Alison Testa learned of Cole Kendall's identity on December 6, 2019 does not change this outcome. A guidance counselor like Alison Testa is not an "appropriate person" under Title IX. *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 173 (3d Cir. 2002) (holding that a guidance counselor was not an "appropriate person" whose knowledge of alleged Title IX action was sufficient to put the school on actual notice); *Does v. Se. Delco Sch. Dist.*, 272 F. Supp. 3d 656, 688 (E.D. Pa. 2017). As such, Alison Testa's knowledge of Cole Kendall's identity in December 2019 was not imputed to Geibel and did not provide it with "actual notice." Moreover, there are no allegations that Ms. Testa or the police told anyone at Geibel of the identity of Plaintiff's purported perpetrator.

Because Geibel did not have actual notice until February 9, 2020, the only harassment it could be liable for is that which occurred after that date. But having actual notice does not necessarily make Geibel liable because notice is only one element of a Title IX claim. To be actionable, a school must have had actual knowledge of the harassment, was thereafter

"deliberately indifferent" to the complaint, and its deliberate indifference *caused* the student to suffer "severe and pervasive" harassment that deprived the student of educational benefits. *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205-06 (3d Cir. 2001) ("[P]rivate damages actions against the school are limited to cases [in] which the school 'acts with deliberate indifference to known acts of harassment . . . .'") (quoting *Davis*, 526 U.S. at 633, 653.) The deliberate indifference standard incorporates a causation requirement." *Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689, 705 (M.D. Pa. 2018). Indeed, to be actionable the school's action or inaction "must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 645 (holding that a school "could be liable in damages only where their own deliberate indifference effectively caused the discrimination" and noting the "high standard" is necessary to "eliminate any 'risk that the [school] would be liable in damages not for its own official decision but instead for" an individual's independent actions). Thus, a plaintiff must establish that the alleged harassment occurred "subsequent to an official's decision not to remedy a known violation." *Swanger*, 346 F. Supp. 3d at 705.

Plaintiff does not allege that she suffered any harassment after February 9, 2020, let alone harassment that was "severe and pervasive." Indeed, other than the March and April 2019 incidents, the only other occurrences of harassment that Plaintiff alleges are that Cole Kendal sent her unwanted photographs of his penis and grabbed her buttocks without her consent while on the school bus. (Am. Compl. ¶¶ 18-20, 45.) Such allegations are insufficient to constitute actionable harassment because Plaintiff does not indicate when the purported incidents occurred. Because Plaintiff cannot establish that these alleged incidents occurred after Geibel had actual notice, Geibel cannot be held liable for them. *Lansberry*, 318 F. Supp. 3d at 748. 751.[4]

---

[4]  Even if Plaintiff had alleged that Cole Kendall grabbed her buttocks sometime after February 9, 2020, the allegation would still be insufficient to establish liability against Geibel because it

Plaintiff's Title IX claim fails because she does not allege that she suffered any harassment *because of* Geibel's alleged indifference. As such, Count I of Plaintiff's Amended Complaint should be dismissed.

### ii. Because Geibel Did Not Have "Actual Notice" Until February 9, 2020, Plaintiff's Allegations of Liability Prior Thereto Should Be Dismissed.

Were Plaintiff able to maintain a Title IX claim, her allegations of liability against Geibel prior to February 9, 2020 must be dismissed because she failed to demonstrate that Geibel had "actual knowledge" of her purported harassment prior to that date.

A school's liability for student-on-student harassment arises only when an appropriate person has actual knowledge of the harassment, the school is deliberately indifferent to the student's complaint, and the student suffers additional severe and pervasive harassment as a result of the school's indifference that deprives the student of educational benefits. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). As detailed in Section II.B.i, *supra*, Geibel did not have actual knowledge of Plaintiff's alleged harassment when Plaintiff reported it to Principal Nickler because Plaintiff withheld the identity of her alleged harasser from the Geibel Defendants. (Am. Compl. at ¶¶ 31-32.) And Plaintiff pled not facts to establish that either Alison Testa or the police informed Geibel of the identity of Plaintiff's purported perpetrator after Ms. Testa reported Cole Kendall in December 2019. Indeed, it is not until February 9, 2020, when Alison Testa advised Dr. Marsteller of Cole Kendall's purported harassment of Plaintiff, that Geibel had actual notice. (Am. Compl. ¶ 57.)

---

did not occur on Geibel property or in an environment under its control. Plaintiff alleges that "Defendant Kendall . . . regularly grabb[ed] the Plaintiff's buttocks when she passed him on the school bus." (Am. Compl. ¶¶ 20, 45)) As a school is only liable for harassment or discrimination that occurs in an "environment over which [it] exercised some degree of control," Cole Kendall's alleged actions on the school bus cannot be attributable to Geibel. *See MDB*, 386 F. Supp. 3d at 578 (citing *Davis*, 526 U.S. at 643–45).

9

Because Geibel did not have actual notice until February 9, 2020, any allegations of liability prior thereto should be dismissed. *Lansberry*, 318 F. Supp. 3d at 751 ("if an "appropriate person" lacked "actual knowledge" of the sexual harassment, the school [] cannot be found to have acted with deliberate indifference.") (quoting *Frazer v. Temple Univ.*, 25 F. Supp. 3d 598, 614 (E.D. Pa. 2014)).

### C. The Gist of the Action Doctrine Bars Plaintiff's Negligence Claim.

Though Plaintiff levies a claim of negligence against the Geibel Defendants, her allegations sounds in contract because Geibel is a private school. As such, any duties the Geibel Defendants owed Plaintiff were contractual in nature and Plaintiff's negligence claim is therefore precluded by the gist of the action doctrine.

The gist of the action doctrine "prevents plaintiffs from recasting ordinary breach of contract claims as tort claims." *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 591 (W.D. Pa. 2019) (Hornak, J.) (citing *Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. 2005)). Relevant here, the doctrine bars a negligence claim for conduct sounding in contract. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 70 (Pa. 2014); *see also Downs v. Andrews*, 639 F. App'x 816, 820 (3d Cir. 2016). Under the doctrine, the "gist of the action" is contractual if "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." *MDB*, 386 F. Supp. 3d at 591 (quoting *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3d Cir. 2001)). Key to this analysis is the "nature of the allegedly breached duty . . . if the duty would not exist without the contract, then the claim sounds in contract alone." *Id.* (citing *Bruno*, 106 A.3d at 68).

Plaintiff alleges the Geibel Defendants owed her a duty to supervise and protect her while she was on Geibel's property and that they breached this duty when they failed to do so. (Am. Compl. ¶¶ 73-74.) While the relationship between a public school and a student may give rise to

10

such a duty of care, no such duty exists here because Geibel is a private school. (*Id*. at ¶ 5) ("Geibel . . . is a private, Roman Catholic high school . . . .") In Pennsylvania, "the relationship between a student and a *private* school is a contractual one." *MDB*, 386 F. Supp. 3d at 591 (citing *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016)) (emphasis in original). As such, any breach of these duties sounds in contract, not tort. *Id*. at 591-92 (holding's plaintiff's negligence claim against private school was actually one for breach of contract and therefore barred by the gist of the action doctrine). Because Plaintiff's relationship with the Geibel Defendants is contractual, her negligence claim is barred by the gist of the action doctrine and must be dismissed.

### D. Plaintiff Cannot Establish the Elements of Negligent Infliction of Emotional Distress.

As a preliminary matter, Plaintiff's NIED claim cannot survive because she cannot establish an underlying negligence claim. *See Humphries v. Pennsylvania State Univ.*, No. 4:20-CV-00064, 2020 WL 5878409, at *10, n. 84 (M.D. Pa. Oct. 2, 2020) (citing *Deitrick v. Costa*, 2015 WL 1605700 (M.D. Pa. Apr. 9, 2015)) ("In all cases [alleging negligent infliction of emotional distress], Plaintiff must establish a prima facie case of negligence.").

Plaintiff's NIED claim fails for an additional reason; namely, that she did not suffer any physical injury as a result of Principal Nickler or Dr. Marsteller's allegedly negligent conduct. It is a longstanding rule of Pennsylvania law that "[p]hysical injury must be averred to sustain a cause of action for negligent infliction of emotional distress." *Armstrong v. Paoli Mem'l Hosp.*, 633 A.2d 605, 609 (Pa. Super. Ct. 1993) (collecting cases in which demurrer was sustained on claims of negligent infliction of emotional distress where the plaintiff failed to allege physical harm to him or herself). While long-continuing physical distress, such as severe nausea or headaches, repeated hysterical attacks, or mental aberration may be compensable, minor physiological reactions, such as "temporary fright, nervous shock, nausea, grief, rage, and

11

humiliation, when transitory in nature, are not compensable harm." *Armstrong*, 633 A.2d at 609. To be actionable, a plaintiff must allege "*immediate* and *substantial* physical harm." *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 28 (Pa. Super. Ct. 2000), *affd*, 767 A.2d 548 (Pa. 2001) (emphasis in original).

Here, Plaintiff has not alleged that, as a direct result of Principal Nickler or Dr. Marsteller's conduct, she has experienced any specific, severe, and long-continuing physical injury or distress. Instead, she simply alleges that she experienced "severe emotional distress, shock, horror, fright and psychological trauma" as well as emotional distress. (Am. Compl. at ¶¶ 46, 48, 64, 83, 85.b.) Such alleged injuries, however, cannot sustain a claim for NIED as Pennsylvania courts have long held that "[t]here can be no recovery for humiliation, disappointment, anxiety, or mental suffering, or emotional distress when unconnected with physical injury or physical impact." *Gefter v. Rosenthal*, 119 A.2d 250, 251 (Pa. 1956).

Nor can Plaintiff's alleged emotional and psychological trauma constitute "physical harm" for purposes of a NIED claim. Such conclusory allegations are of unspecified intensity, specificity, and duration and are therefore insufficient to state a claim for NIED. *See Stovall v. Kallenbach*, No. 1683 WDA 2018, 2019 WL 2808297, at *3 (Pa. Super. Ct. July 2, 2019) (affirming trial court decision to sustain preliminary objections on claim for infliction of emotional distress where plaintiff did not allege specific, physical injury in connection with such distress); *Armstrong*, 633 A.2d at 609. Plaintiff's new allegation that she "required medical and mental health treatment" as a result of Principal Nickler or Dr. Marsteller's alleged conduct, (Am. Compl. at ¶¶ 64, 83,) is insufficient to save her claim because allegations of "physiological injuries" or that one sought "psychological counseling" are the exact type of averments that "do not sufficiently state physical manifestations of emotional suffering to sustain a cause of action as required." *Stovall*, 2019 WL

12

2808297, at *3.

As Plaintiff cannot establish Dr. Marsteller and Principal Nickler owed her a duty or that she suffered a physical injury as a results of their alleged negligence – both necessary elements of a NIED claim – Count III of her Amended Complaint must be dismissed.

### III.     CONCLUSION

For all the foregoing reasons, the Geibel Defendants respectfully request that the Court grant the Motion and enter an Order in the form attached to the Motion.

Respectfully submitted,

Date:  February 3, 2021

*/s/ Corey S. D. Norcross*
Corey S. D. Norcross (PA Id No. 316909)
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19013
Phone: 215.564.8000
Fax: 215.564.8120
cnorcross@stradley.com

*Counsel for Defendants Geibel Catholic Junior Senior High School, Patricia Nickler, and Maureen Marsteller*

## CERTIFICATE OF SERVICE

I, Corey S. D. Norcross, hereby certify that I filed a true and correct copy of the Geibel Defendants' Motion to Dismiss Plaintiff's Amended Complaint using the CM/ECF system, which will automatically serve on all counsel of records and parties who are registered CM/ECF participants a copy via an email notification of such filing.

*/s/ Corey S. D. Norcross*
Corey S. D. Norcross

Date: February 3, 2021

4859426